# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| ANDRE GUYTON | ) | |
| | ) | |
| v. | ) | Case No. CV412-241 |
| | ) | CR410-093 |
| UNITED STATES OF AMERICA | ) | |

## REPORT AND RECOMMENDATION

A jury convicted Andre Guyton of distributing ecstasy and cocaine, in violation of 21 U.S.C. § 841(a)(1). He received a 210-month sentence. Doc. 58. He unsuccessfully argued on appeal that the evidence was insufficient because there was no direct visual evidence of his alleged distribution. *United States v. Guyton*, 447 F. App'x 105, 106 (11th Cir. 2011). Now he moves for 28 U.S.C. § 2255 relief, insisting that his attorney bungled a plea offer.[1] He also contends that the Court denied him his due process and other rights during trial and sentencing. Doc. 86.[2] Guyton requests free copies of court documents and appointment of counsel. Docs. 63, 88 & 96. He also wants the government to re-offer a

---

[1] He was represented first by Christopher Joel Osteen, and later by Kimberly L. Copeland. Although he references "counsel" in his filings, *see, e.g.*, doc. 87 at 7, it is clear from the totality of his filings that he limits his claims to Copeland.

[2] The Court is citing only to the criminal docket and using its docketing software's pagination; it may not always line up with each paper document's printed pagination.

plea bargain. Doc. 99. Finally, he moves for an evidentiary hearing. Doc. 103.

## I. BACKGROUND

Guyton steadfastly maintained his innocence in this case, and even testified that the government had the wrong man. Yet, the evidence against him was

> overwhelming. A confidential informant testified she participated in two controlled buys with Guyton and purchased controlled substances from him on both occasions. Audio recordings of both controlled buys were presented, as well as recordings of telephone conversations between the informant and Guyton regarding the price and amounts of ecstasy and cocaine to be bought. Multiple witnesses identified Guyton's voice on the recordings. Moreover, law enforcement officers testified they observed Guyton at the scene of both controlled buys.
>
> At the close of the Government's case, Guyton did not move the court for a judgment of acquittal and elected to testify on his own behalf. He claimed the informant was lying, and denied it was his voice in the audio recordings. On cross-examination, Guyton admitted he had multiple prior drug convictions as well as a conviction for theft by receiving stolen property. Guyton also revealed he was indeed involved in a recorded conversation where he referred to "G":
>
>> Q: Who's the guy you refer to as "G" on the recordings?
>>
>> A: You talking about "G," a girl?
>>
>> Q: You heard the recording. When you talk about "G"—
>>
>> A: —I know, I was talking about my home girl.

2

> Q: Okay, I thought you weren't there.
>
> A: (No response.)
>
> Q: I thought you said you weren't there.
>
> A: (No response.)
>
> Q: So that was you on the recordings.
>
> A: No, that wasn't me.
>
> The jury was entitled to conclude Guyton was *lying* when he denied that he sold drugs to the informant and denied that his voice was captured on the audio recordings. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir.1995) ("[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt.").

*Guyton*, 447 F. App'x at 106 (emphasis added). Again, the court rejected Guyton's insufficiency argument and upheld his conviction. *Id.*

## II. ANALYSIS

In Ground One Guyton claims that his attorney, Kimberly L. Copeland, failed to inform him of a government plea offer[3] that would have allowed him to plead "without career offender applied," with a resulting sentence of 70 to 87 months' imprisonment. Doc. 86 at 4; doc.

---

[3] Though Guyton claims that the government made this offer in the "bond hearing transcripts," doc. 87 at 6, no such offer is reflected in the transcripts of any hearing. *See* docs. 94 & 95.

3

87 at 6-7. And, he would have taken the deal, he insists. Doc. 87 at 8. Thus, Guyton concludes, she provided him with ineffective assistance of counsel (IAC).[4] Doc. 86 at 4-5; doc. 87 at 3, 6-12.

Citing to neither, Guyton necessarily relies upon *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399 (2012),[5] which involved a failure to communicate a plea offer for a lower sentence than the defendant actually received when he later pled guilty, and its companion case, *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376 (2012), which applied the Sixth Amendment right to effective assistance of counsel to the plea-

---

[4] For ineffective assistance of counsel to provide a basis for federal habeas relief, movant must satisfy the two-part test from *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must show that his counsel's performance was deficient and that it prejudiced his defense. *Id.* To show prejudice, movant need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error. *Id.* at 694. A reasonable probability in this context is "a probability sufficient to undermine confidence in the outcome." *Id.* Guyton thus must establish both deficient performance and prejudice in order to establish ineffective assistance of counsel. *Id.* at 687. "Surmounting *Strickland* 's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485 (2010).

[5] *Frye* held that defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms that may be favorable to the accused, prior to the offer's expiration; counsel's failure to do that satisfies the deficient performance prong of the *Strickland* standard. 132 S. Ct. at 1409. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability that: (a) he would have accepted the earlier plea offer had he been afforded effective assistance of counsel; and (b) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. *Id.* At bottom, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 132 S. Ct. at 1387.

bargaining context. *Id.* at 1390; *see also In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012).

Courts "should be wary of [claims like Guyton's] because defendants will always want the best of both worlds: the chance at acquittal at trial, yet the chance to plead guilty if the trial defense fails." *United States v. Day*, 969 F.2d 39, 46 n. 9 (3d Cir. 1992), *quoted in Merzbacher v. Shearin*, 706 F.3d 356, 367 (4th Cir. 2013). And "[a]s multiple courts have recognized, after the fact testimony concerning a defendant's desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *United States v. Godson*, 2013 WL 1290389 at * 8 (W.D. Pa. Mar. 27, 2013) (quotes, cite and alteration omitted). *Frye/Laffler* claims can arise from an undocumented moment between client and counsel, spawning evidentiary hearing swearing matches and sometimes lengthy opinions resolving them. *See, e.g., Theus v. Tucker*, 2012 WL 7783575 (N.D. Fla. Oct. 31, 2012).[6]

---

[6] This Court has been struggling with just such a moment in the "lost appeal" cases, where § 2255 movants claim that they wanted to appeal their conviction, told their lawyer to file an appeal, but the lawyer failed to do so (or, that their lawyer failed to even consult with them about their right to appeal). Typically the government responds with the lawyer's affirmance that he or she did confer with the client who verbally elected not to appeal. The § 2255 movant will then claim to the contrary.

5

Although a § 2255 evidentiary hearing must be held "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), it is not required "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel." *Oliver v. United States*, 292 F. App'x 886, 886-87 (11th Cir. 2008)[7] (quotes and cite omitted); *see*

---

To cut down on evidentiary hearings, and because that duty-to-confer step is too often mishandled, *see, e.g., Pinckney v. United States*, 2010 WL 5497793 at * 1 n. 1 (S.D. Ga. Dec. 3, 2010) (collecting cases), this Court created a reminder "Notice Of Counsel's Post–Conviction Obligations," to be furnished to counsel and client immediately after each conviction. *See Baughman v. United States*, 2008 WL 3861991 at *3–6 (S.D. Ga. Aug. 18, 2008) (copy of that form); *United States v. Smith*, CR412-211, doc. 28 (S.D. Ga. Apr. 16, 2013) ("Notice of Post-Conviction Consultation Certification").

That form requires both attorney and client to consult about the defendant's appellate rights, then execute and file the Notice, thus memorializing that consultation and the defendant's decision. Failure to do that, the Court reminded can and in fact has resulted in substantial costs to both counsel and the Court system. *See Hayes v. United States*, 2011 WL 3468799 at * 5 n. 5 (S.D. Ga. Aug. 9, 2011) ("It is not difficult to estimate that § 2255 motions like this cost the taxpayers $10,000 or more, and in a time of record national debt."), *adopted*, 2011 WL 4704219 (S.D. Ga. Oct. 6, 2011); *Reese v. United States*, 2012 WL 70680 *1 (S.D. Ga. Jan. 9, 2012).

Just as it generated a form there, apparently a form is needed for this situation -- a point driven home by Guyton himself: "If attorney[] Copeland was attempting to get petitioner to accept a plea and he refused[,] there are forms in which a competent attorney would have made him sign stating that he did not wish to plea to the deal she had on hand." Doc. 98 at 4. Nothing prevents the government and local defense bar from formulating and widely disseminating such a form, much less submitting one for inclusion on the "forms" section of this Court's website.

[7] There the defendant appealed the district court's denial of his § 2255 motion without holding an evidentiary hearing. Oliver argued that he was entitled to such a hearing because his trial counsel failed to inform him of a plea offer extended by the

*also United States v. Pender*, 2013 WL 1137452 at * 1 (4th Cir. Mar. 20, 2013) (remanding for an evidentiary hearing on a *Frye/Laffler* claim; in the district court the government had tendered only an "*unsworn, unauthenticated* assertion that Pender had been offered a plea agreement that he personally rejected.") (emphasis added); *Johnson v. United States*, 2012 WL 4759410 at * 1 (N.D. Ga. Oct. 4, 2012).[8]

Guyton, for that matter, must show enough to support a hearing on both the deficiency *and* prejudice prongs of his IAC claim. But

---

government on the eve of trial. *Oliver*, 292 F. App'x at 886. Affirming the district court, the *Oliver* court found that he failed to demonstrate a reasonable probability that he would have pled guilty but for his attorney's error: "Here, Oliver stated only that he would have 'seriously considered' the government's plea offer, which as in [*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995)], falls short of the required standard. In addition, Oliver maintained his innocence throughout trial and during his sentencing, which undermines his claim that he would have consented to a plea agreement." *Id.* at 887 (footnote omitted). Guyton likewise maintained his innocence throughout trial, during his sentencing, and now during his § 2255 proceedings (he only claims he would have pled guilty to get the deal, not because he in fact *is* guilty).

[8] Note that a *live* evidentiary hearing is not always necessary:

> When the judge that tried the underlying proceedings also presides over the § 2255 motion, a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner. The court may forgo a full hearing and instead request letters, documentary evidence, and affidavits to aid in its resolution of the claim.

*Lin Guang v. United States*, 2013 WL 870266 at * 2 (S.D.N.Y. Mar. 7, 2013) (quotes, alterations and cites omitted).

> [w]hat exactly *Frye* and *Lafler* require of a petitioner to demonstrate prejudice is not clear at this time. The Sixth Circuit has adopted the view that a petitioner's own *credible* testimony that he would have accepted a plea offer combined with a disparity between the sentence offered and the sentence actually received establishes a reasonable probability that the petitioner would have accepted the plea. *See, e.g., Smith v. United States*, 348 F.3d 545, 551–52 (6th Cir. 2003); *see also Titlow v. Burt*, 680 F.3d 577, 588–89 (6th Cir. 2012), *petition for cert. filed*, No. 12–414 (U.S. Oct. 2, 2012). The Seventh Circuit requires a petitioner to offer "objective evidence" that establishes a reasonable probability of acceptance. *See, e.g., Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991). The Supreme Court has not yet resolved what, if anything, a petitioner must show in addition to his own *credible post hoc* testimony and a sentence disparity to satisfy the *Strickland* prejudice prong. *Cf. Frye*, 132 S. Ct. at 1411.

*Merzbacher*, 706 F.3d at 366 (emphasis added). The Eleventh Circuit has not yet spoken on that issue post-*Frye/Laffler*. But as shown below, Guyton loses under either standard.

Prosecutor Karl Knoche extended two plea offers to Guyton, neither of which involved an offer to drop the career offender enhancement. Doc. 97-3 at 2 (Knoche Decl. ¶¶ 2-4). In his offer to Guyton's first attorney, Guyton would plead to a lesser included offense -- the distribution of a *quantity* of crack cocaine -- with no promise of a particular sentence. It did not include any promise regarding Guyton's career offender status. *Id.* ¶ 2. In his offer to succeeding counsel, Copeland, Guyton would plead to Count One of the indictment -- the

8

distribution of ecstasy. "Again, the offer made no representation as to the sentence to be imposed and did not include any promise that Guyton would not be treated as a career offender." *Id.* ¶ 4.

In her 28 U.S.C. § 1746 declaration, Copeland insists she thoroughly explained Knoche's offer to Guyton, who "categorically refused to consider any plea offer that would require him to serve any jail time. He said specifically that 'if they are going to give him time, they were going to give it all to him,' meaning that he wanted to take an all-or-nothing approach and proceed to trial." Doc. 97-4 at 2-3 ¶ 7. Guyton, she says, "believed he would prevail at trial because the government['s] confidential informant, who was one of his relatives, would ultimately not testify against him. I tried, but failed to convince [him] that the informant likely would testify and that he should therefore consider pleading guilty." *Id.* ¶ 8.

In his 28 U.S.C. § 1746 declaration -- submitted *before* he saw the Knoche and Copeland declarations -- Guyton insists that Copeland simply did not inform him of the deal he *believes* the government "was willing to give," which included no career offender enhancement. Doc. 86 at 4 ("Ineffective assistance of counsel, failure to communicate plea

9

agreement that the government was willing to give. Court records confirm that counsel and the government confer on different pleas [that] I was never informed of. Court transcripts show the government almost begging for me to accept a plea without career offender applied.")[9]; *id.* at 5 (complaining that Copeland never advised him about the career offender enhancement; "Counsel was ineffective for failing to inform petitioner of plea agreements offered by the government. Counsel gave bad uninvestigated advice on the maximum sentence he could receive."); *id.* at 13 (28 U.S.C. § 1746 perjury certification).

In his "Affidavit" (not sworn in front of a notary, but signed under a 28 U.S.C. § 1746 affirmation and witnessed) he clarifies that he in fact *did* have plea discussions with "counsel" (presumably Copeland): "*During plea discussions*, my counsel did not advise me that I would be categorized as a career offender." Doc. 87 at 35 ¶ 2 (emphasis added); *see also id.* ¶ 3 (in attempting to advise him about sentencing range, "counsel was never under the impression, nor harbored any belief that I

---

[9] Guyton cites no specific page of any court record to support this assertion. In his 28 U.S.C. § 1746 "affidavit," he claims that "[a]t the bond hearing, I overheard the prosecutor saying he was willing to give me the same plea offer he offered a known criminal defendant being prosecuted at the same time as I, however, counsel never relayed this plea offer to me." Doc. 87 at 35. This is, of course, hearsay evidence probative of no fact before this Court.

10

would be sentence as a career offender."); *id.* ¶ 4 ("Had my counsel properly advised me, *during plea discussions*, that I qualified as a career offender, I would not [have] gone to trial, but rather would [have] pleaded guilty.") (emphasis added); *id.* at 36 ¶ 7 ("Prior to going to trial in this matter, I always expressed an interest of [sic] pleading guilty to a favorable plea offer.").

Guyton's *pre*-Knoche/Copeland declarations brief laces together the foregoing factual assertions into the substance of his claim:

> It is well documented in the court proceedings that petitioner's attorney was aware of a plea agreement that the government and herself discussed (prosecutor stated at the bond hearing that he was willing to give petitioner the same deal as [James] Blagmon[, another Copeland client,] 87 months). See bond hearing transcripts. Counsel never discussed *this* plea agreement with Guyton. Petitioner was led to trial by counsel not knowing the actual time he was facing nor was he ever advised *of the plea offer to not be careered out*. Failure to inform a defendant or state [sic] of plea offer is now a violation of petitioners [sic] is now a violation of petitioner's rights.

Doc. 87 at 6 (emphasis added).

Guyton thus is arguing that he discussed a plea with Copeland, but she failed to convey (and thus he missed out on) the same 70-87 month sentencing exposure deal offered to another one of her clients, Blagmon, who received no career offender enhancement. He thus blames Copeland

11

for that. *Id.* at 6-7. Put another way, Guyton believes the government offered him the same deal as Blagmon (a plea involving no career offender enhancement) but Copeland simply dropped the ball in conveying that offer to him.

Yet, Knoche *never* offered him that deal. He never offered to forego the right to file a notice of 21 U.S.C. § 851 enhancement, which is precisely what he did just before trial. Doc. 39.[10] That missing ingredient was pivotal in *Scott v. United States*, 325 F. App'x 822, 824–25 (11th Cir. 2009) (rejecting similar IAC claim because movant's "argument assumes a non-negotiated plea would have prevented the Government from requesting the § 851 enhancement, but [petitioner] provides no support for this proposition"), and is likewise the case here.

Guyton *claims* he heard Knoche make an offer equal to Blagmon's (dropping the career offender enhancement) but as noted *supra*, he relies on sheer hearsay and thus has not rebutted the Knoche/Copeland declarations. Hence, he has not countered the government's showing that a core element of his IAC claim (Copeland's alleged fumbling of a

---

[10] "The government may file a § 851 information regarding a prior conviction at any time prior to trial or the entry of a guilty plea." *Scott v. United States*, 2013 WL 1149938 at * 5 (D. Mass. Mar. 18, 2013).

12

plea offer that would drop the career-offender enhancement) never happened.

Too, he says in his opening brief only that "there is a *reasonable probability* that if he had known of the greater sentencing exposure, he would have plead guilty and availed himself of a guideline reduction for acceptance of responsibility." Doc. 87 at 10 (emphasis added). He does *not* state, under penalty of perjury, that (a) in fact he is guilty of the crimes charged; and (b) he in fact would have pled guilty on the deal Knoche *actually* offered. Instead, he speaks only hypothetically ("would have plead guilty"), and on a deal that was simply never offered. *See Oliver*, 292 F. App'x at 887 (rejecting a similar claim, noting: "Here, Oliver stated only that he would have 'seriously considered' the government's plea offer, which as in *Coulter*, falls short of the required standard. In addition, Oliver maintained his innocence throughout trial and during his sentencing, which undermines his claim that he would have consented to a plea agreement.").

Guyton's first IAC claim therefore fails outright. *See Godson*, 2013 WL 1290389 at * 8 ("Here, petitioner maintained his innocence throughout the proceedings and testified under oath at two trials that

13

the firearm in question was not his and he was unaware of its presence in the vehicle, and there is no contrary evidence, other than petitioner's after-the-fact averment made after conviction, that he ever would have been amenable to a plea deal. Under these circumstances, the record belies petitioner's assertion that he had any intention of entering a guilty plea."); *United States v. Cuellar-Chavez*, 2013 WL 425886 at * 12 (N.D. Ind. Feb. 4, 2013); *Scott*, 2013 WL 1149938 at * 6; *United States v. Williams*, 2012 WL 6554424 at *3 (D. Kan. 2012) (finding no prejudice where "there is no evidence that the government would not have filed an § 851 information if defendant had entered an open plea"); *Shorter v. United States*, 2012 WL 933331 at * 6 (M.D. Fla. Mar. 20, 2012).

After the government served its § 2255 response, including the Knoche and Copeland declarations, Guyton -- who basically impaled himself during his trial by fatuously lying on the witness stand -- changed his tune. Now he claims (in raw, unedited form):

> Again petitioner is positive that him and attorney Copeland *never* had any conversations concerning plea offers of *any* such. . . . There was never any attempts by her to relay *any* plea to petitioner. Regardless of the career offender added or not the plea offer would be resulted in a shorter prison sentence. . . . Plainly put attorney Copeland failed to relay any type of plea negotiations.

Doc. 98 at 4 (emphasis added).

Unsurprisingly, and evidently cognizant of the consequences for lying to this Court,[11] Guyton supports that assertion -- which flat-out contradicts his earlier, § 1746-affirmed declarations that he in fact *had* plea discussions with Copeland -- with *no* § 1746 affirmation. Doc. 98 at 1-13. The omission is conspicuous. It is also pointless because this Court accepts no unsworn assertions of fact, especially those in made in cynical quest of an evidentiary hearing. Again, this claim is baseless.

The same must be said for the remainder of Guyton's claims. Ground Two is essentially a rehash of Ground One, doc. 86 at 5; doc. 87 at 7-12, and thus fails for the same reason. In Ground Three Guyton complains that Copeland failed to knock down Fed. R. Evid. 404(b) evidence against him at trial, doc. 86 at 9; doc. 87 at 12-13, but other than complaining that the evidence was "prejudicial" (almost all evidence adduced by an adversary is), he supplies no basis for showing that she performed deficiently, and he advances a conclusory claim at that.[12]

---

[11] *See United States v. Dickerson*, No. CR608-36, doc. 1 (S.D. Ga. Dec. 11, 2008) (§ 2255 movant indicted for perjury for knowingly lying in his motion seeking collateral relief from his conviction); *id.*, doc. 47 (guilty verdict), *cited in Irick v. United States*, 2009 WL 2992562 at * 2 (S.D. Ga. Sept. 17, 2009).

[12] Such claims support no § 2255 relief. *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *see also United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991)

15

In Ground Four, Guyton claims a due process violation in that the government "elicited perjured testimony" against him, doc. 86 at 8; doc. 87 at 14-17, but as the government has shown (doc. 97 at 19-23) and Guyton does not dispute, *see* docs. 99 & 103, there is simply no evidentiary support for this claim.[13]

In Ground Five Guyton claims sentencing error (that the trial court erred in enhancing his sentence by two levels based on *his* perjured testimony), and that Copeland was ineffective for failing to object and pursue it on appeal. Doc. 86 at 14; doc. 87 at 18-25. He then cites the government informant's testimony about *Guyton's* sale of drugs to her and insists that it is "false." Doc. 87 at 18-25. He points to the jury's acquittal of him on Count Three. Doc. 87 at 23; *see also* doc. 50 at 1 (jury's "not guilty" verdict on that count).

---

(no hearing required where movant's allegations fail to satisfy the prejudice prong of *Strickland's* ineffective assistance of counsel test); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations).

[13] Within this claim he insists -- in his brief, not his § 2255 motion -- that "[t]here should have been a jury instruction on compensated witnesses" and that the trial judge erred in failing to give one. Doc. 87 at 16. In fact, however, the court *did* give an instruction. Doc. 48 at 5-6.

As the above-excerpted, Eleventh Circuit illumination of Guyton's own testimony shows, the jury was free to conclude that he simply *lied* about his sale to the informant, and about not being the man on the tape of the transaction. Put another way, the jury was free to, and in fact did, convict him on the other two counts -- which he now conveniently ignores. His patently false testimony easily supported the obstruction enhancement he received.

Even so, Guyton's ultimate U.S. Sentencing Guidelines range turned on his career offender status, which included no increased offense level due to his obstruction. *See* Presentence Investigation Report at 6, ¶¶ 23, 25. Hence, he could not show prejudice in any event. And Ground Six, where Guyton faults Copeland for not pursuing all that on appeal and through a rehearing en banc motion, doc. 86 at 15; doc. 87 at 26-28, is baseless for the same reason.

In Ground Seven movant complains that his Confrontation Clause rights were violated because he was not availed the chance to confront the analyst who tested the drugs used to charge him. Doc. 86 at 15-16; doc. 87 at 29-30. However, the analyst (Tanja Kopp) *was* presented at

trial. Doc. 74 at 82-80, and Copeland cross-examined (hence, confronted) her. *Id.* at 89-90. This claim is likewise baseless.

## III. CONCLUSION

Andre Guyton's § 2255 motion is baseless and should be **DENIED**. Doc. 86. His motions for free copies of court documents, for an evidentiary hearing, for appointment of counsel, and an Order directing the government to re-offer him a plea bargain are meritless and thus **DENIED**. Docs. 63, 88, 96, 99 & 103.

Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this 29Th day of April, 2013.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA